UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ROBIN T. SMITH,

                Plaintiff,

v.                                                Case No. 5:09-cv-25-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). (Doc. 1.) The Commissioner has answered (Doc. 6) and both parties have filed briefs outlining their respective positions. (Docs. 15 & 17.) For the reasons discussed below the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

On May 8, 2006, Plaintiff filed an application for SSI alleging a disability onset date of May 8, 2006. (R. 72-74.)[1] Plaintiff's application was denied initially and upon reconsideration. (R. 21-32, 42-50.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 10.) The ALJ conducted Plaintiff's administrative hearing on August 5, 2008. (R. 183-96.) The ALJ issued a decision

---

[1] Plaintiff previously applied for SSI in February 2005, but his application was denied and he failed to timely appeal. At the hearing, Plaintiff's counsel requested leave to reopen that file. (R. 185-86.) The ALJ found that it was unnecessary to reopen the file given the disposition of the case. (R. 14.)

unfavorable to Plaintiff on September 23, 2008. (R. 14-20.) The Appeals Council denied Plaintiff's request for review. (R. 4-6, 7-9.) Plaintiff then appealed to this Court. (Doc. 1.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[2] See 42 U.S.C. § 405(g).

[3] See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] See Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] See Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[6] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past

---

[6] See Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] See 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] See 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] See 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] See 20 C.F.R. § 404.1520(b).

[11] See 20 C.F.R. § 404.1520(c).

[12] See 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are

---

[13] See 20 C.F.R. § 404.1520(e).

[14] See 20 C.F.R. § 404.1520(f).

[15] See Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] See Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] See Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[18] See Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was forty-seven (47) years old when the ALJ issued his decision. (R. 195.) Plaintiff has a tenth grade education and has worked as a migrant farm worker, janitor and concrete laborer. (R. 77, 81, 187-88.) Plaintiff contends that he has been unable to work since May 8, 2006 due to back and leg pain. (R. 76.)

In February 2003, Plaintiff was injured at work while "pulling cable." (R. 139.) Plaintiff was treated by Stephen Pyles, M.D. In June 2003, Dr. Pyles referenced a lumbar MRI dated May 2, 2003, which showed a large left paramidline disk herniation at L4-L5 with compression and severe right L5-S1 neural foraminal narrowing. (R. 140.) During June and July 2003, Dr. Pyles administered three rounds of epidural steroid

---

[19] See Walker at 1003.

[20] See Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

5

injections, which resulted in some improvement in pain. (R. 110-12, 137, 138.)

However, on September 2, 2003, due to recurrent low back pain and "significant pain running down the left leg, resistant to conservative management," Plaintiff had a left diskectomy at L4-L5 with Troy Lowell, M.D. (R. 113-23, 159-61.)

After surgery, Plaintiff began a course of physical therapy. (R. 124-32.) By November 14, 2003, it was noted that Plaintiff had returned to 60% of his prior level of function; however, Plaintiff rated his pain levels at 7/10 and 8/10. (R. 124.) Plaintiff saw Dr. Lowell eight times from September 15, 2003 through May 10, 2004. (R. 147-54, 156, 158.)

An MRI in December 2003 revealed left posterolateral protrusion of the L4-5 disc, consistent with residual or recurrent posterior protrusion; possible left L4-5 partial hemilaminectomy with mild enhancement at the posterior margin of the L4-5 interspace, consistent with postsurgical residual scarring; and milder posterior annular bulges of L304 and L5-S1 discs, with right greater than left neural foraminal stenosis at L5-S1 from a combination of spurs and bulging annulus, as well as a suggestion of a "frontal osteoma on the right." (R. 133-34.)

Pain management records from March 2004 show that Plaintiff described his back and lower extremity pain as "shooting, tingling, numbing, sharp and tight" and on March 29, 2004 an epidural injection was administered. (R. 144.)

On June 23, 2004, Dr. Lowell noted that Plaintiff had "no-showed" for several appointments and, thus, he assigned MMI as of that day as "8% of the whole person for surgically treated herniated disk, with recurrent herniation." (R. 146.) There are no further treatment records in the file.

6

However, Donald Tindall, M.D. performed two consultative examinations. The first examination was performed on May 10, 2005. (R. 162-63.) Dr. Tindall noted Plaintiff's complaints of constant low back pain that worsen with bending, twisting, and prolonged sitting, standing and walking. (R. 162.) On examination, he noted right and left lumbar paraspinous muscle spasm; tenderness over and around L4-5; left knee giveway secondary to low back pain; decreased thoracolumbar spine range of motion; and giveway secondary to low back pain with attempted strength testing of the right and left hip. He also found full range of motion of all major joints, with no joint tenderness, redness, swelling or warmth.

Dr. Tindall evaluated Plaintiff again on June 29, 2006. (R. 164-66.) In the section of his report entitled "Social History," Dr. Tindall noted Plaintiff reported he could sit for up to 30 minutes, stand for about 5 minutes, walk about 50 yards, and lift about 8 pounds. He noted that Plaintiff had a "small amount of difficulty" getting out of a chair and on and off the examination table; and his gait was mildly antalgic to the left. His grip strength was 5/5 bilaterally and strength throughout his right and left upper extremity was 5/5. There was full range of motion in all major joints with no tenderness, redness, swelling or warmth. Plaintiff had right and left muscle spasm at T11-L4; decreased thoracolumbar spine range of motion; and give-away secondary to low back pain with strength testing of the left hip. Dr. Tindall concluded that Plaintiff's chronic low back pain and radicular pain with physical findings was consistent with left L5 radiculopathy.

There are two Physical RFC Assessments performed by state agency consultants – Kysha Gregory on July 20, 2006 (R. 167-74) and Efren Baltazar, M.D. on

7

September 21, 2006 (R. 175-82.)  Both consultants determined that Plaintiff could perform light exertional work activity and agreed that Plaintiff could perform light work activity with postural activities limited to "occasional" except for climbing ladder/rope/scaffolds which was marked "never."   In addition, Dr. Baltazar found that Plaintiff should avoid concentrated exposure to extreme heat and cold, and work hazards.  Gregory, a lay disability examiner, found no environmental limitations.

At the hearing, Plaintiff testified that he has constant pain in his low back and down his left leg to his toes that is "like someone just sticking like a needle." (R. 189-90.)  Plaintiff rated his pain an "eight" on a scale of one to ten, with ten the worst possible pain. (R. 190.)  Plaintiff testified that he has applied for treatment at a free clinic but has not yet been approved. (R. 191.)  Plaintiff reported problems sitting too long and standing (R. 191) and that he has to constantly change positions. (R. 192.)  He can sit or stand for 15 to 20 minutes without needing to move around (R. 192); lift five to six pounds; and walk a block or block and a half.  (R. 192.)  He reported trouble with concentration and memory. (R. 193.)  Plaintiff testified that he drives on short trips. (R. 195.)  Over the counter pain medications, ben gay and heating pads help a "little bit" with pain. (R. 195.)

Based on his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff had chronic lower back pain with let L5 radiculopathy.  (R. 16.)  However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.   (R. 16.)

8

The ALJ found that Plaintiff retained the RFC to perform the full range of sedentary work as defined in 20 CFR §416.967(a). (R. 16-18.) He can lift, carry, push, or pull 10 pounds occasionally and less than 10 pounds frequently; stand or walk 2 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday. Then, the ALJ concluded that Plaintiff could not perform his past relevant work, but that he could perform jobs that exist in significant numbers in the national economy. (R. 18-19.) In reaching this conclusion, the ALJ relied on the grids and not the testimony of a Vocational Expert. Accordingly, the ALJ found that Plaintiff was not disabled.

## IV. DISCUSSION

Plaintiff raises three arguments on appeal – i.e., that the ALJ failed to properly evaluate the opinions of Dr. Tindall, a consultative examiner and Dr. Baltazar, a state agency consultant; that the ALJ failed to properly evaluate Plaintiff's subjective complaints; and that the ALJ erred by mechanically applying the grids and not obtaining vocational expert testimony. None of these arguments have merit.

### A. The ALJ did not err in his consideration of the opinions of Dr. Baltazar and Dr. Tindall

First, Plaintiff argues that the ALJ failed to provide any reasons for rejecting the opinion of Dr. Tindall, a consultative doctor. Specifically, Plaintiff points to several notations in the "Social History" section of Dr. Tindal's report in which he noted Plaintiff's subjective statements regarding his ability to sit, stand, walk and lift. (R. 164.) However, these were not medical findings or opinions by Dr. Tindall – but rather subjective reports by Plaintiff – and thus, there was no reason for the ALJ to discount these statements regarding functional limitations. Moreover, while Dr. Tindall opined that Plaintiff has

9

"chronic back pain and radicular pain with physical findings consistent with left L-5 radiculopathy," his findings on physical examination do not corroborate Plaintiff's self-described functional limitations. Dr. Tindall noted that Plaintiff had a "small amount" of difficulty getting in and out of his chair, and on and off the examining table, but he had normal grip and muscle strength. (R. 165.) In addition, Dr. Tindall reported Plaintiff had muscle spasm but no muscle atrophy of the lower extremities and normal range of motion in all major joints.

Second, Plaintiff contends that the ALJ failed to provide any reasons for rejecting the opinion of Dr. Baltazar, a state agency consultant, whose opinion Plaintiff contends "directly contradicts" the ALJ's RFC finding.[23] In September 2006, Dr. Baltazar completed an RFC assessment form, finding that Plaintiff could perform light work activity with postural activities limited to "occasional" except for climbing ladder/rope/scaffolds which was marked "never." (R. 175-82.) He also found that Plaintiff should avoid concentrated exposure to extreme heat and cold, open heights and unguarded machinery.

The ALJ was not obligated to accept Dr. Baltazar's conclusions. Unlike the report of a treating source, the statements from a non-examining physician are not entitled to any particular weight. The Eleventh Circuit has held that the opinion of a non-examining reviewing physician is entitled to little weight, and taken alone, does not

---

[23] While Dr. Baltazar found some postural and environmental limitations that the ALJ did not include in his RFC finding, his RFC finding actually was more liberal than the ALJ, in that he concluded Plaintiff could perform light work – i.e., frequently lift 10 pounds, occasionally lift 20 pounds, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday.

constitute substantial evidence to support an administrative decision.[24]  Moreover, the opinion of a non-examining doctor may be rejected when the evidence supports a contrary conclusion.[25]

Here, the ALJ's RFC finding that Plaintiff could perform a full range of sedentary work is supported by substantial evidence. As the ALJ correctly noted, Plaintiff was last seen by a treating physician in 2004.  While Dr. Lowell imposed some work restrictions in May 2004  – i.e., no lifting, pushing, or pulling more than ten pounds; no prolonged standing; and no bending – those restrictions pre-dated Plaintiff's date of onset by two years.  (R. 147.)  Moreover, there is no evidence that Dr. Lowell considered the restrictions permanent, as he released Plaintiff from care one month later (after he failed to show up for several appointments), and assigned only an 8% whole body permanent impairment rating. (R. 146.)  Likewise, as discussed above, Dr. Tindall's consultative findings in 2005 and 2006 are consistent with the ALJ's RFC finding.   Thus, the only opinion that suggested Plaintiff could not meet the sedentary work requirements, was that of Dr. Baltazar; and his opinion, by itself, is not substantial evidence to support the administrative decision.

Moreover, it is unlikely that the postural and environmental limitations found by Dr. Baltazar would erode the occupational base for a full range of sedentary work.  The definition of sedentary work requires the worker to sit for the majority of the time and only requires lifting up to ten pounds and occasionally lifting and carrying items like

---

[24] See Swindle v. Sullivan, 914 F.2d 222, 226 n.3 (11th Cir. 1990); Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987.)

[25] Syrock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985.)

11

docket files, ledgers and small tools.[26] According to Social Security Ruling 96-9p, the postural limitations related to climbing ladders, ropes, scaffolds, balancing, kneeling and crouching do not usually erode the occupational base for a full range of sedentary work; nor do restrictions on engaging in hazards such as moving mechanical parts of equipment or machinery. Likewise, working at unprotected heights would appear to go beyond the sedentary definition.

Accordingly, while the findings of nonexamining state agency consultants are to be considered in the evaluation, for the reasons discussed above, the administrative result would have been the same in this case and, thus, the ALJ's failure to discuss the opinion of Dr. Baltazar does not mandate remand.[27]

### B. The ALJ's credibility finding is supported by substantial evidence

Plaintiff next argues that the ALJ improperly rejected Plaintiff's subjective complaints. If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[28] While an adequate credibility finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough to

---

[26] 20 C.F.R. §416.967(a).

[27] See Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)(finding that an ALJ's mischaracterization of claimant's past work was harmless error when the mistake did not affect the ultimate outcome of the disability determination.)

[28] Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

enable a court to conclude that the ALJ considered her medical condition as a whole."[29] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[30] However, a lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.[31] If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."[32] As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.[33]

In the instant case, the ALJ concluded that Plaintiff's medical impairments could reasonably be expected to produce the alleged symptoms, but that the Plaintiff's statements concerning the "intensity, persistence and limiting effects of these symptoms are credible but not persuasive of a disabling impairment to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." (R. 17.) First, the ALJ noted the lack of functional limitations found by treating sources during the relevant period. (R. 17-18.) In response, Plaintiff points to a May 10, 2004 treatment note from Dr. Lowell, in which he noted some work restrictions – i.e., no

---

[29] Foote at 1562-1563.

[30] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[31] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

[32] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

[33] Id. at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

13

lifting, pushing, or pulling more than ten pounds; no prolonged standing; and no bending. (R. 147.) The ALJ discussed this treatment note in his Decision even though it pre-dated Plaintiff's date of onset by two years. (R. 17.) There is no evidence that Dr. Lowell considered these restrictions permanent. Indeed, when Dr. Lowell released Plaintiff from care one month later (after he failed to show up for several appointments), he assigned only an 8% whole body permanent impairment rating. (R. 146.)

In discounting Plaintiff's credibility, the ALJ also noted that Plaintiff had activities of daily living that were not consistent with his subjective complaints and that Dr. Tindall's physical examination findings did not support Plaintiff's subjective complaints. (R. 17-18.) The ALJ also correctly noted that Plaintiff did not have medical treatment during 2005, 2006, 2007 or until he sought care at a free clinic in 2008. Even if Plaintiff was impoverished, if his medical condition was truly dire, it only makes sense, that he would have sought medical attention at the free clinic sooner than he did.[34]

Accordingly, because the ALJ articulated numerous specific reasons for finding Plaintiff's subjective complaints not entirely credible, and those reasons are supported by substantial record evidence, there is substantial evidence to support the ALJ's decision to discredit Plaintiff's testimony regarding limitations.

### C. The ALJ properly relied on the grids

Finally, Plaintiff argues that the ALJ erred by relying solely on the grids without the testimony of a vocational expert. Because the ALJ found that Plaintiff could not

---

[34] See Ellison v. Barnhart, 355 F.3d. 1272, 1275 (11th Cir. 2003)(ALJ decision upheld where ALJ relied upon other factors besides noncompliance, where noncompliance based on an inability to pay for treatment.)

return to his past relevant work, the burden of proof shifted to the Commissioner to establish that the claimant could perform other work that exists in the national economy.[35] The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony.[36] It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.[37] Exclusive reliance on the "grids" is not appropriate "*either* when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."[38] If either condition exists, the ALJ is required to consult a vocational expert.[39]

Here, the ALJ found that Plaintiff retained the RFC to perform a full range of sedentary work and then, using Rule 201.18 of the grids, the ALJ concluded that Plaintiff was not disabled. Plaintiff argues that the ALJ was required to consult a vocational expert to determine the impact of the environmental limitations found by Dr. Baltazar, as well as Plaintiff's complaints of chronic pain. However, as discussed above,

---

[35] See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

[36] See id.

[37] See id.

[38] See Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004)(quoting Francis v. Heckler, 749 F.2d 2565, 1566 (11th Cir. 1985.)

[39] See id.

the ALJ's conclusion that Plaintiff could perform a full range of sedentary work is supported by substantial evidence. The ALJ was not required to credit the environmental limitations noted by Dr. Baltazar. Moreover, he properly evaluated Plaintiff's subjective complaints.

Plaintiff also contends that a VE was needed in light of the ALJ's finding that Plaintiff's testimony that he has difficulty concentrating and remembering, was "credible but not persuasive of a disabling impairment. . ." (R. 17.) Plaintiff correctly notes that the ALJ must consider the impact of both and severe and non-severe impairments on the ability to work. However, the ALJ found that Plaintiff's concentration and memory problems do not "cause any functional restrictions and do not cause more than minimal limitation in the ability to perform basic work activities." (R. 16.) Plaintiff has failed to identify any medical records suggesting that Plaintiff's difficulty concentrating and remembering has any impact on his ability to work. Indeed, Dr. Tindall noted that Plaintiff's memory and cognitive function were intact. (R. 163.)

As such, the girds provided substantial evidence to support the ALJ's conclusion that Plaintiff was not disabled. Thus, the ALJ did not err by relying on the grids without obtaining vocational expert testimony.

## V. CONCLUSION

Based on the foregoing, the Commissioner's decision is due to be **AFFIRMED.** The Clerk shall enter judgment in favor of the Commissioner and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 5, 2010.

GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel

16